Next case is Robinson v. DVA, 2009-7116. This case is Robinson v. DVA, 2009-7116. You did not file a reply. We did not, Your Honor. But you filed an animal called Robinson's opposed motion for remand. We did, Your Honor. Shouldn't that have been in the reply? You seem to suggest that it was based on some discussions with the other side. But weren't those – the other side did not take a position contrary to what it had taken in its brief, did it? No, Your Honor, they did not. So then I don't understand why we had to have a last-minute filing from you instead of just a reply to what was in the brief. Following the submission of the government's blue brief, we believed that the parties were in agreement. The parties, the government, and Robinson agree that there was an error as a matter of law. You mean the government's red brief. You said the government's blue brief.  After the submission of the government's red brief, we believed that the parties agreed on the fundamental issues in the case. That is, that there was an error as a matter of law committed by the Veterans Court and that remand was appropriate. And what I want to know is what the discussions afterwards – what was different in the discussions afterwards than what you had thought up to that time? Your Honor, we submitted to the government a proposed joint motion for remand, and we believed and hoped that we could agree on that joint motion to avoid having this case submitted. The parties exchanged drafts of the joint motions for remand, and it became clear to us through that process that what the government was arguing was that the board on remand could consider Florida statutory law and that this court should instruct the board on remand to do that. But I thought that was in their brief. Now, there is a statement in the brief by the government that that would be appropriate. The distinction that we see is we didn't understand that the government would insist that this court's order on remand had to include an instruction to the board that the board should consider Florida statutory law. Okay. Thank you. Now I understand what the issues are. Thank you. Well, now you can help me understand what the issues are. I guess I'm trying to make sure I understand the difference then, what remains in terms of a difference between your position and the government's position. Is it only that the government is saying now that we recognize there's a problem with the way Florida law was interpreted and you could have an involuntary or a voluntary manslaughter conviction, we ought to send it back to the board and they ought to be able to take new evidence or reconsider the question that was not considered previously, which is which of these wasn't under Florida law? That's my understanding of the government. And the question is do you disagree with that and why? And since they got it wrong the first time, don't they need instructions from us on remand so they don't get it wrong again? Well, that is, Your Honor, Judge Prost, you have articulated the distinction between the parties. The government believes that on remand the board should consider Florida statutory law and we disagree with that position and, in fact, the record is fairly clear that both the regional council and the board disagree with the position the government is advancing and let me explain why. Before you explain why, tell me, unless your explanation is what you think ought to be done on remand. What Mrs. Robinson believes should be done on remand is that the board should consider its own regulation and it should make the necessary fact-finding under the VA regulation, which is did Mrs. Robinson intentionally and wrongfully murder her husband under the VA regulation? If her conviction was for voluntary manslaughter that absolutely requires an element of intent, wouldn't then the board's or the own regulation be met? If she had pled guilty to voluntary manslaughter, why doesn't that end the entire inquiry? That might, but she did not, and the record is clear on that point because what the record demonstrates is what she did plead to and you see that. But she pled no law. She did and she was sentenced and convicted to just the charge of manslaughter and you see that in the record. But we don't know whether, I mean, do we know? I mean, I thought the point here is we do not know whether or not the manslaughter was voluntary or involuntary and that's what we need to know in order to resolve this issue. But we do know what she pled no law to. We do know what she was convicted of and what she was sentenced on and that is clear from the transcript of the no law proceeding before the state court and, Your Honor, that is at the joint appendix, page 109. And the court says there, the court will adjudicate you guilty of the lesser included offense of manslaughter. The court's sentence in respect to the plea agreement will be that your sentence will be time served, which we calculated at 588 days. That is the only record and that is the complete record of what Mrs. Robinson was ultimately convicted of. But how do we... I'm sorry, doesn't that leave open the very question that Judge Prost was asking you? You're not suggesting that this record definitively establishes that she pled and was found only guilty of involuntary manslaughter, are you? No, the record is just that she was convicted of statutory manslaughter. But how do we know whether or not there's not more information out there? I mean, what bothers me about this case is that it appears, and the government isn't using this against you, but at some point before the board, the board referred to the fact that her counsel was acknowledging that it was voluntary. Now, nobody's using that to prejudice you now, but it seems to me that there was really no need to introduce evidence as to involuntary versus voluntary because it seems like the parties conceded it was voluntary. So how do we know? I mean, you can tell us this is what the record is, but we don't know that this is all the information that might be relevant to this question that's out there, right? Well, there are two points on that, Your Honor. There was, and I believe the parties agreed, there was an error by the representative who was not a lawyer. Right, and we don't want to hold that against the representative, but it seems to me that if you're a fact finder and parties aren't disputing that it is voluntary, there is no need for someone to look through the records and find evidence on that point. So why shouldn't there be an opportunity now? I mean, maybe you're right. Maybe there's absolutely no further relevant evidence bearing on this question under the Florida statute, but how are we in a position to know that now? Your Honor, if there is additional evidence that she pled guilty to voluntary manslaughter, then absolutely that should be considered. We believe the record is clear because the court in passing judgment and sentencing, which we have on the record, just said that it was manslaughter, and Florida statutory manslaughter is just that. There are not separate statutory provisions for voluntary and involuntary. It is all in one catch-all. Well, we'll hear what the government says, but I'm not sure that there's that much daylight between your position and the government if you're all agreeing. I mean, you say there's no more evidence. If the government is simply saying, well, we want an opportunity for the board to confirm what you're saying, there seems to be not much of a problem. Our point is, Your Honor, that on remand, the board considers the issues under its mandate, which is the VA regulations. Did Mrs. Robinson intentionally and wrongfully kill her husband? Okay, so let me make sure I understand this, because I think I might understand your argument now much better. Is it that you're saying, look, the record evidence is clear, manslaughter. There's nothing else you can glean from the conviction itself. It only says manslaughter, so it can shed no more light on the voluntariness or involuntariness of the actions. And you're saying the real crux of the inquiry should be the regulation, which says focus on intent, figure out if there's intent. If there is, she loses DIC benefits. If there's not, she doesn't. I got it? That is exactly correct. I guess I still don't see, though, and I'll have to ask the government attorney this, how there's any real difference between your two positions. Are you saying in that inquiry they should not consider the no low plea? No, we think it's absolutely appropriate for the totality of the evidence to be considered. But is the difference, do you think, and we can ask the government this, that they want the opportunity, there might be more records in connection with the Florida case, and they want the opportunity to the extent that there's some other document out there that exists, if it does exist, to look and see whether or not further clarification can be given on this Florida plea. But we don't even believe that that would be inappropriate. If there is additional evidence, we believe that the totality of the evidence should be considered, and it should be considered in the framework of the VA regulation. I understand the technical argument you're making now, but what I don't understand is how the outcome is going to be any different between your view and the government's view. Because the government's view is that this is voluntary, there had to have been intent established, and under the regulation she loses benefits because it requires intent. And your view is you can't tell from this whether intent is present. Well, I think the government is probably going to agree that just those sentences on that page don't say whether intent is present. And so the same evidence that they would look for to say, yes, there was a finding of voluntary manslaughter, it seems to me is the exact same evidence that would be presented in favor of the regulation. My point is at the end of the day, you have the same exact outcome. I can think of no way this case could come out differently under either of the two standards. So I'm wondering why we're arguing over it. Your Honor, I believe we're arguing over it. It's the way in which this Court should instruct the Veterans Court and subsequently the Board to consider the issues on remand. So precisely what do you take issue of in what the government would require? The government is asking for this Court to instruct the Board to consider Florida statutory manslaughter law and whether or not her actions were voluntary or involuntary manslaughter under Florida statutory law. The proper interpretation is for the Board to be considering its own regulation. But what's your problem with that? I mean, you may think it's a waste of time because you know there's no documentation that's going to illuminate any of the questions that we're going to be left with. But what other than that is your problem with that? Well, in fact, in 2003 at a hearing before the Board, the Board said clearly that its job was not that of a criminal court. And an instruction, and that is, Your Honor, at the Joint Appendix, page 430, at a hearing with Mrs. Robinson and her DAV representative, the Board said the Board understood what happened in Florida, but it was not its job to do that of a criminal court, and it wasn't the Board's job to revisit what had been adjudicated in Florida. Instead, the Board should look under its own regulations and make the determination under the VA regulation whether there was an intentional and wrongful killing here. Well, isn't that sort of what they did before and they got it wrong? Well, no, Your Honor, because there's never been any fact-finding made. The essential facts have never been considered. Instead, the Veterans Court found as a matter of law that the Nolo plea necessitated a finding of intent. So none of the other evidence has ever been considered by the Board. So that fact-finding, that mandatory fact-finding has never been done. Let's assume somewhere in the Florida records there's some piece of paper indicating that there was a finding that it was involuntary manslaughter. Why shouldn't the government have, I mean, that would be probative, that would be an issue that the Board ought to look at in the first instance, right? Whether there's been a determination before law. That's absolutely true. So what is, I don't know, I mean, it seems to me that that's all the Government is looking for. The Board confers. Now, your position is there is no other probative evidence dealing with the Florida manslaughter conviction. And that may be true as well. But why shouldn't there be an opportunity at least to probe whether or not there's further evidence that goes to the question of whether or not her plea in Florida was for voluntary rather than involuntary manslaughter? Our position is not that that information should not be gotten. If, in fact, it has already been adjudicated, if there has already been an adjudication under Florida statutory law that she was convicted of voluntary manslaughter, that may end the inquiry. Our point is only that the Board should not be re-adjudicating or reconsidering the issues under Florida statutory law. So the difference in between what the Government may be suggesting is that something already exists and that there was that adjudication. That is quite different from the Board now on remand considering the totality of facts and making a determination under Florida statutory law. Is the problem that her plea is inconsistent with the facts that she asserts independent of the plea? In other words, she is asserting a third-party intruder, which makes it different than the other key cases that have been cited. So she's asserting there was a third-party intruder, which is totally inconsistent with any kind of plea of guilt, be it voluntary or involuntary or whatever. Is that the problem here, that if they look to a plea of guilt, her explanation does not jive with her plea of no low contentry? I don't believe that is the problem, Your Honor. The problem is that the Board has never considered the totality of the facts. In addition to the no low plea and the conviction of guilt, they have not considered the other exculpatory evidence, the blood evidence, the blood on the murder weapon that was not her, that the killer was right-handed and she is left-handed. If she had pled to voluntary manslaughter, then they wouldn't need to do all of that, right? Because there would be an admission of intent involved in that plea, and that admission of intent would suffice for denying her benefits. I believe that's correct, yes. But what if on remand the government does find evidence that she pled to voluntary manslaughter? I believe in that case there would be a prior adjudication. Okay, that's all. I got it. Thank you. Will we store your rebuttal? Good afternoon, and may it please the Court. I'd like to just touch on two points to hopefully add some clarity to this discussion. The first involves the agency's position regarding the specific legal error, and the second goes to the agency's position regarding the nature of the remand. Turning to that first issue, the Veterans Court erred by concluding that a conviction for manslaughter in Florida necessarily precludes benefits under 38 CFR Section 3.11. The Florida courts have made it clear there are two varieties of manslaughter. Well, I think Ms. Hines agrees with you on that. Fair enough, Your Honor. I'll turn immediately to the remand issue, and the agency asked that the Court remand this case, vacate the decision of the Veterans Court, and remand with instructions on the correct law, and that is because there are two different types of manslaughter under Florida law, that a finding under a conviction for manslaughter is not sufficient under 3.11. And that's really it. It's not much more complicated than that. We're asking that this Court remand back to the Veterans Court, and presumably then to the Board. Suppose a determination can't be conclusively made whether she pled to voluntary or involuntary. Suppose there is no more evidence than what we already have in front of us, and based on what I've read, I certainly can't decide which one she pled to. So suppose nothing else is uncovered, then what happens? At that point, the Board would have to just adjudicate the issue without regard to the conviction. Pursuant to its own reg. Exactly what Ms. Hines wants to have done, right? That's correct. So you heard the answers to the questions that we asked Ms. Hines. Is there any difference between your two positions? Well, there is some daylight between the parties' positions, and I think they come out in our responsive brief, first with respect to the legal error. Now, when you say your responsive brief, the first brief you filed. The responsible principle brief. The red one. There you go. Correct, Your Honor. There is some daylight with respect to our position. There was an assertion at several points in Mrs. Robinson's brief that the Board would not be able to look at intent, and that intent is not, in fact, an element of manslaughter in Florida. We disagree with that. Intent is not an element of manslaughter in Florida when it relates to the culpable negligence strain of manslaughter, but it is very relevant and, in fact, the distinguishing factor when it comes to the active procurement variety of manslaughter in Florida. And that's ultimately the legal error that the Veterans Court made in this case. I'm not sure. I didn't hear anything. She's got rebuttal time. I didn't hear any dispute, really, on that issue. Well, I just raise that because that is something that, looking at Mrs. Robinson's brief, it appears there was a distinction there, and I know a significant portion of our brief was actually addressing that. I believe it's Section 3 of our brief.  to a conviction of manslaughter in Florida. I think she agreed in response to my question that if there is evidence that Mrs. Robinson was, in fact, found guilty of voluntary manslaughter, that would be the end of it. That would suffice to deny her DIC benefits. So in light of that statement during oral argument, is there still any disagreement between the government and Mrs. Robinson on this position? None that I can discern on that point, Your Honor. Frankly, if there are no further questions. Well, let me just say, Mrs. Robinson seems to be a sympathetic party all the way up to the governor's mansion in Florida, but it is an important issue about awarding benefits based on the death allegedly caused by someone who is going to get the benefits. So there are important issues here. Certainly, Your Honor, and that's why we're here. That's why we're flagging the issue for the court. We think there's a legal error, and that needs to be corrected. And ultimately, the adjudication that has not yet occurred and was arrested by the legal error should happen, and on remand it would happen. In all the briefing, including your second reply brief, which was an informal putting together of paper, in any of that, where do you most specifically state what you would like the remand to say? If the court would look at the, I believe it's on page 6, and trickles over onto page 7 of our, I suppose we could call it a response to the motion, that's correct. Not your red brief. The response to the motion, Your Honor. Page 6? Yep, and I believe on the bottom there is a paragraph that begins with instead. Instead is suggested in our brief. That's correct. And if the court, that's the best language we have, going from that and trickling over to page 7 to articulate our position. Thank you. Thank you. Ms. Hines? If we were to focus on what was just cited at the bottom of page 6 of the papers that were filed either on March 31st or April 1st, the bottom of page 6, looking at that language, maybe you could tell us what you disagree with on that language. I don't have the language handy. Would you mind reading it to me as you mull it over? Would that be helpful? It wasn't a late filed paper, so. The last paragraph of page 6 of the government's opposition to our motion for remand states instead, as suggested in our brief, the court should reband this appeal to the Veterans Court and instruct the court that, pursuant to Florida law, intent is not necessarily an element of the crime of manslaughter because manslaughter by act or procurement or voluntary manslaughter includes the element of intent, but manslaughter by culpable negligence or involuntary manslaughter does not. That's a correct statement, right? That is a correct statement. Where we disagreed and where we seemed to reach an impasse was on the joint motions for remand, and in particular in the order of this court that the government was suggesting. The government stated that the board could consider Florida statutory law. But that's not what that says, and you don't have any problem with that language right there? Because it goes on to say a factual finding of intent has to be made under regulation, blah, blah, blah. So it seems to be exactly what you were explaining to me you were looking for. We do not disagree with this portion of the brief. There are other portions that we disagree with. Okay, that's very helpful. But that we do not disagree with. As we believe we made clear in our opening brief, the blue brief, intent is not a necessary element, and that was our fundamental point. The other point I'd like to make is to consider on remand whether the board has jurisdiction to consider issues under Florida law. The board instead has jurisdiction to consider its own regulations and make determinations and factual findings under its own regulations, not under Florida statutory law. It does not make those findings under Florida statutory law. Turning to page 7 of this item, which was also referenced by your opponent here, what about the language beginning, Thus the court should instruct the Veterans Court to remand this case to the board for a determination as to whether claiming intentionally and wrongfully caused the death of her husband based upon the evidence of record and any additional evidence necessary for such a determination. Do you dispute that language? No, we do not. Seems like we have our remand order, huh? If there are no further questions. Thank you. Thank you, Your Honor. Thank both counsel. Case is submitted. All rise.